```
IN THE UNITED STATES DISTRICT COURT
   FOR THE WESTERN DISTRICT OF TENNESSEE
              WESTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:09-cr-20152-JPM-cgc |
| ) | |
| CEDRIC SMITH-HODGES, ) | |
| ) | |
| Defendant. ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS**

Before the Court is Defendant Cedric Smith-Hodges's ("Defendant") Motion to Suppress (Docket Entry ("D.E.") 55), filed February 5, 2010. The Court referred the motion to the Magistrate Judge for Report and Recommendation on February 9, 2010. (D.E. 56.) The Magistrate Judge held a hearing on the motion on April 22, 2010. (D.E. 74.) The Report and Recommendation was received on November 15, 2010. (D.E. 92.) The Magistrate Judge recommended that the Court deny Defendant's Motion to Suppress. (Report & Recommendation ("Rep. & Rec.") 7.) Defendant filed his objections to the Report and Recommendation on November 29, 2010. (D.E. 99.) The Government responded in opposition on December 3, 2010. (D.E. 100.) After de novo review, the Court ADOPTS the Magistrate Judge's Report

and Recommendation in its entirety and DENIES Defendant's Motion to Suppress.

**I. Background**

Defendant is charged in one count of a two-count indictment with possessing a gun as a convicted felon, in violation of 18 U.S.C. § 922(g). (D.E. 3.) Defendant seeks to suppress "all evidence of and testimony relating to alleged pretrial identifications of him by government witnesses . . . ." (Def.'s Mot. to Suppress (D.E. 55) 1.)

On February 17, 2009, Brandon Loggins ("Loggins") and his girlfriend, Angel Mitchell ("Mitchell") were leaving Club Hughes, located at 1217 Thomas Street in Memphis, Tennessee. (Apr. 22, 2010 Hr'g Tr. ("Hr'g Tr.") (D.E. 82) 54.) As they left, Loggins noticed two cars parked in front of and behind his own car. (Id.) Loggins began to unlock his car door when "two gentlemen jumped out with guns and demanded everything that [he] had in [his] pocket." (Id.) Loggins heard a gun cock and saw two men walking toward him. (Id. at 56.) One carried a handgun; the other carried a shotgun. (Id.) One gunman had a dark complexion and braids in his hair. (Id. at 57.) He wore a black hooded sweatshirt. (Id.) The other gunman was shorter, but had a similar complexion and braids in his hair. (Id.) The shorter gunman also wore a hooded sweatshirt. (Id.)

2

The taller gunman ordered Loggins to lie on the ground. (Id. at 58.) He walked Loggins over to the passenger side of Loggins's car, where Loggins lay down. (Id.) The taller gunman then took Loggins's money. (Id.) The shorter gunman demanded money from Mitchell. (Id.) One of the gunmen told Loggins that he would shoot him if Loggins got up from the ground. (Id.) The gunmen drove away in a "silver Mercedes-Benz." (Id. at 60.)

Loggins and Mitchell decided to follow the gunmen. (Id. at 59.) Mitchell drove Loggins's car and Loggins rode in the passenger seat. (Id. at 60.) Loggins called 911 to report that a robbery had occurred. (Id. at 62.) He next saw one of the gunmen get out of the Mercedes-Benz and get into a Jeep Cherokee "with real dark tint on it." (Id. at 59-60.) As the Mercedes-Benz and the Jeep Cherokee drove onto the interstate, the 911 operator told Loggins to stop following the gunmen. (Id. at 61.) Loggins and Mitchell discontinued their chase and drove to Loggins's home. (Id. at 62.)

A few minutes after Loggins and Mitchell arrived at Loggins's home, a Memphis Police Department dispatcher called Loggins to ask whether he could meet Memphis police officers at a Mapco gas station, located at Chelsea Avenue and Hollywood Street. (Id.) Officer Roger Pike ("Pike") had apprehended Defendant and two other suspects there. (Id. at 23.) Loggins went to the gas station immediately. (Id. at 63.) After

arriving, Loggins identified Defendant as one of the men who had robbed him and Mitchell. (Id.) The identification occurred as Defendant sat handcuffed in the back seat of a squad car.[1] (Id. at 24.)

## II. Standard of Review

"A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge. 28 U.S.C. §636(b)(1)(C). The Court is not required to review those aspects of the Report and Recommendation to which no objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The Court should adopt the findings and rulings of the Magistrate Judge to which a party files no specific objection. Id.; see also United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

## III. Analysis

The Magistrate Judge recommended that Defendant's Motion to Suppress be denied. (Rep. & Rec. 7.) In doing so, the Magistrate Judge proposed the following conclusions of law: (1) the show-up identification was not unduly suggestive; and (2)

---

[1] The identification is hereinafter referred to as a "show-up identification."

4

the show-up identification was reliable under the totality of the circumstances.  (Id. at 5-6.)

### a. Defendant's Objections to Proposed Findings of Fact

Defendant offers a single objection to the Magistrate Judge's proposed findings of fact.  Defendant argues that the Magistrate Judge erred in finding that Loggins spontaneously identified Defendant at the Mapco gas station.  (Def.'s Objections to Magistrate Judge's Rep. & Rec. on Def.'s Mot. to Suppress ("Def.'s Objs.") (D.E. 99) 3.)  Defendant contends that the show-up identification was not spontaneous.  (Id. at 4.)

The Court rejects Defendant's contention.  The testimony of Pike and Loggins is not inconsistent on the issue of whether at least part of the identification was spontaneous.  Pike testified that Loggins "jumped out and ran over toward both of the suspect[s'] vehicles and said . . . that's them."  (Hr'g Tr. 24-25.)  Pike stated that he "got out of [his] vehicle because [Pike] didn't want [Loggins] to get too much proximity to the subject."  (Id.)  Loggins testified that he "jumped out . . . and started walking over there [toward the suspects' vehicles]."  (Id. at 80.)  Loggins stated that he identified the suspects' vehicles and then "they [i.e., police officers] walked me to the police car and asked me could I identify them . . . ."  (Id. at 81.)  Thus, it appears from the testimony that Loggins spontaneously identified the suspects' vehicles and then

5

identified Defendant upon the officers' request.  Accordingly, Defendant's objection is OVERRULED.[2]

**b. Defendant's Objections to Proposed Conclusions of Law**

Defendant raises two objections to the Magistrate Judge's proposed conclusions of law: (1) the show-up identification was unduly suggestive; and (2) the show-up identification was unreliable under the totality of the circumstances.

A show-up identification violates a defendant's right to due process when the identification "was so unnecessarily suggestive as to run the risk of irreparable mistaken identification."  Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005) (citing Neil v. Biggers, 409 U.S. 188, 198 (1972)). The Court must first assess whether the show-up identification was unnecessarily suggestive, and if so, whether the identification was nevertheless reliable under the totality of the circumstances.  Id.  A show-up identification "will be admissible if it is reliable."  Drew v. Parker, 244 Fed. App'x 23, 27-28 (6th Cir. 2007).  The Court must consider five factors when determining whether a show-up identification is reliable. Id.  The five factors are:

> (1) [T]he witness's opportunity to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior

---

[2] The Court notes that even if Defendant's objection to this proposed finding of fact were sustained, the outcome would not change because the show-up identification was still reliable under the totality of the circumstances. See infra.

6

description of the defendant; (4) the witness's level of certainty at the pretrial identification; and (5) the length of time between the initial observation and the identification.

Howard, 405 F.3d at 472 (citing Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).

Even assuming that the show-up identification in the instant case was unnecessarily suggestive, the Court finds that the identification was nonetheless reliable because it satisfies the five Brathwaite factors. The Court addresses each factor in turn.[3]

As to the first factor, Loggins testified that he got a "good look" at Defendant. (Hr'g Tr. 56.) On cross-examination, Loggins stated that "[f]rom the whole time he demanded money and all that, I'm giving him stuff, I'm looking at him, yeah." (Id. at 73.) Loggins insisted that he "had a long enough time" to view Defendant at the scene. (Id.) While both gunmen wore hooded sweatshirts, neither gunman was wearing a hood at the time of the robbery. (Id. at 67.) Moreover, a street light illuminated the area around the robbery. (Id.) Accordingly, Defendant's argument that Loggins had an insufficient opportunity to observe Defendant fails.

---

[3] Defendant concedes that the fifth Brathwaite factor, the length of time between Loggins's initial observation and the show-up identification, "cuts in favor of reliability." (Def.'s Objs. 12.) Accordingly, the Court does not further analyze this factor.

7

As to the second factor, Loggins testified that he was able to "look the gunmen in the face" and to "tell the police who had which gun." (Id. at 65.) Loggins's testimony suggests that he paid a high degree of attention to the gunmen. Accordingly, Defendant's argument that Loggins was not able to pay a great degree of attention to Defendant fails.

As to the third factor, Loggins testified that he was able to "tell the police who had which gun." (Id.) Defendant argues that the "only prior description [Loggins] was able to give was that of the vehicles." (Def.'s Objs. 14.) Defendant contends that Loggins could not be sure that the "same three people [were] in the car." (Id.) Defendant's argument is unavailing in light of Loggins's uncontroverted testimony demonstrating a link between the vehicles and the gunmen. Loggins watched the gunmen drive away in a silver Mercedes-Benz. (Hr'g Tr. 60.) Loggins later saw one gunman leave the Mercedes-Benz and enter a Jeep Cherokee. (Id. at 59-60.) Loggins and Mitchell followed both vehicles nearly to the minute that Defendant was arrested at the Mapco gas station. (Id. at 63.) Loggins's prior description of the vehicles to the 911 operator bolsters the reliability of the later show-up identification because it was Loggins's description that led police to the suspects. (See id. at 51.) Accordingly, Defendant's argument that Loggins's prior description was insufficient fails.

As to the fourth factor, Loggins testified that he was "absolutely certain" regarding his identification of Defendant. (Id. at 65.) Moreover, Pike testified that Loggins was "emphatic" and "sure" about his identification. (Id. at 52.) Defendant argues that Loggins's confidence has "likely increase[d] dramatically as the case progresse[d] due to factors . . . unrelated to witness memory." (Def.'s Objs. 12.) Pike's testimony belies Defendant's contention. Accordingly, Defendant's argument regarding Loggins's level of certainty fails.

Because the five Brathwaite factors are satisfied in the instant case, the Court finds that the show-up identification was reliable under the totality of the circumstances. Accordingly, Defendant's objections are OVERRULED.

## IV. Conclusion

For the foregoing reasons, upon de novo review, the Court ADOPTS the Magistrate Judge's Report and Recommendation in its entirety. Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED this 4th day of January, 2011.

    __/s/ Jon P. McCalla_____
    JON P. McCALLA
    CHIEF U.S. DISTRICT JUDGE